Okay, the first case on the call this afternoon is 5-12-294 People's State of Illinois v. Elliot. Ready to proceed? May it please the court. Counsel. My name is Joel Russell. I am from the Office of the State Appellate Defender, and I am here representing Javon Ellis in this matter. Today I will focus on arguments none of the briefs. However, I am willing and able to accept questions regarding argument two. Supreme Court rules are not mere suggestions, nor are they aspirational. They have the force of law, and they must be followed. Here, the trial court erred when it allowed Javon Elliot to waive counsel and proceed pro se without first admonishing him regarding the nature of the charges and the minimum and maximum sentences prescribed by law. But I'm going to back up and highlight two dates for this court. The first is August 25, 2011. On that date, Javon Elliot pleaded guilty to criminal damage of government property and aggravated battery. He was properly admonished as to the nature of the charges and the minimum and maximum sentences. He was sentenced to conditional discharge. It should be noted that at this August 25 hearing, there was no discussion of a waiver of counsel, nor did Javon Elliot indicate that he wished to proceed pro se then or in the future. Fast forward about six months, and we're at March 5, 2012. There, Javon Elliot and his trial attorney had a disagreement about the filing of a motion for substitution of a judge. Javon Elliot wished to file this motion, and trial counsel would not do so. So Javon Elliot asked the trial court if he could proceed pro se to file this motion. The trial court allowed him to proceed pro se and admonished him regarding his right to trial counsel. However, the trial court failed to admonish him regarding the nature of the charges and the minimum and maximum sentences. The record is clear as to this fact. The state does not argue otherwise. It cannot. Instead, what the state argues is that the admonitions given 193 days prior at the August 25 guilty plea hearing, where there was never any indication of a waiver of counsel, that those admonitions should satisfy the misadmissions six months later. Clearly, this argument under Rule 401 and its jurisprudence cannot stand. The trial court here did not just deviate from a few simple words or phrases. It left out two of the three required admonitions. Any acceptance of the state's argument here would render Rule 401A superfluous, because throughout the course of a trial which spans months and possibly even years, a defendant is routinely admonished. And allowing previous admonitions to later satisfy the missed admonitions would undermine the purpose behind Rule 401A. In People v. Stoops, the court held that the admonitions necessary under Rule 401A must be provided when the court learns that the defendant has chosen to waive counsel, so that the defendant can consider the ramifications of that decision. And that's the purpose behind Rule 401A, so that the defendant has a chance to grasp the entirety of the situation and be informed and make an informed choice. Javon Elliott was not given that opportunity here. He did not make an informed choice. The right to counsel was fundamental in the criminal justice system, and Rule 401A was crafted to ensure that a waiver is knowing and understanding. This Court must find for Elliott, in remand of the trial court, and order the trial court to properly admonish Javon Elliott so that he can make a fully informed decision regarding whether he wants to waive counsel or not. What about the fact that this wasn't raised during a post-trial motion? I'm sorry, Your Honor? Was this issue raised in a post-trial motion? This was not, no. So, the standard that you have to meet here is plain error, correct? Yes. So, how are you going to do that in this case? Plain error can be argued under if there was an error regarding a fundamental right, and the right to trial counsel is fundamental in our justice system. And therefore, that meets the standard for plain error. Are there any other questions? No questions. Thank you. Thank you, Counselor. Thank you. May it please the Court. My name is Whitney Atkins for the people of the state of Illinois. So, Supreme Court Rule 401A mandates that before permitting a probationer to waive his right to counsel, he must be admonished of one, the purpose of the revocation proceeding and the nature of the violation of conditional discharge, two, the minimum and maximum sentence, and three, his right to counsel and the right to confrontation, as well as the right to cross-examine witnesses. These admonishments are designed to ensure that the waiver is knowing and intelligent. The dispositive issue in determining whether a waiver of counsel at a probation revocation hearing is whether the waiver was knowing and intelligent. Defendant's legal sophistication is, if there is evidence of a high degree of legal sophistication, substantial compliance will suffice. The defendant claims that except for his right to counsel, the court did not give him any of the Rule 401A admonishments. Turning to the first admonishment, the purpose of the revocation proceeding and the nature of the violation of conditional discharge, the state argues that the very moment the defendant's proceeding began, the proceeding in which he waives his right to counsel, the trial court did, in fact, inform the defendant of the basis of the conditional discharge. The court informed the defendant of the charges that would be the basis of the revocation. Turning to the last admonishment promulgated by Rule 401A, being informed of your right to counsel, as well as the right to cross-examine and confront witnesses, the court did tell the defendant about his right to counsel at the time of waiver. This is a fact that the defendant does not dispute. At the proceeding in which he waived his right to counsel, he informed the court of his intentions to call a witness. He also called witnesses at his sentencing hearing and cross-examined. Therefore, the record reveals that the defendant was knowledgeable and aware of his right to confront and cross-examine, and he utilized it. So now, the concern is whether the waiver was knowing and intelligent in that the defendant knew of his minimum and maximum sentence and the nature of the proceedings. That is what's left as far as concerns. Now, which case do you contend that he was fairly warned on? Both cases? There are two cases here. Yes. And the judge never mentioned 09CF68, did he? No, he did not state. So there's no warnings on that case. Why is that? Technically, the judge did not state that case, but his trial defense attorney stated on the record that he discussed his cases with the defendant. I believe that in defendant's motions, he listed both cases. So the defendant was aware that the revocation encompassed both cases. But it's the judge's obligation to give these admonitions, correct? Yes, yes. And the judge's responsibility has to talk about the penalties, which would be different in different cases, or maybe because of two cases, they could be different, right? I mean, if you have two charges, you might have a larger penalty, for example. Correct. So how was that met under this rule if the judge didn't talk about 09CF68? Well, again, while the judge did not explicitly name that case, there is quite a bit of evidence that the defendant was aware that he could receive a lengthy sentence. Again, his trial counsel stated that he discussed the cases. In a previous proceeding, he was informed of the maximum for the original charges. But isn't defense counsel's argument correct that if we allowed that kind of thing to happen, then there really would be no reason for this rule? It would just be superfluous? Because everyone at some point, even at the indictment stage, is warned of the sentences. And see, what the defendant does is he mischaracterizes and he narrows my argument, because my argument doesn't rely solely on prior admonishments. The court went through great pains to try to convey to the defendant that it would be very difficult for him to represent himself. He explicitly told him, Mr. Elliott, you are not schooled in law. The trial attorney that I have provided for you is, if you are found guilty, you may go to jail. And I can't stop you, but I want you to know how difficult this will be. I understand that that's not Rule 401A admonishments. I concede that. But it wasn't as though the trial court said nothing. And it also is not as though the defendant did not have a legal sophistication. He filed numerous motions. Right, but should we allow a different standard for defendants just because they've been through the system more than somebody else? No, I don't think we should allow a different standard, but I think that we can allow for a little bit of wiggle room. Wiggle room? I'm sorry, what was that? Wiggle room? A little bit of wiggle room for the- Legal term. Yeah, that's a very important legal term. Yes. Let me ask you another question. The court did, as you said, tried to explain that, you know, this is really dangerous waters you're falling into here if you don't have a lawyer. And the defendant said, well, I want to file a motion. Well, when that motion didn't work out, the defendant then asked for a lawyer back, but the judge didn't give him one. What do you think about that? I think that, as the Supreme Court has said, it's within the trial court's discretion once the trial is well underway. And I understand that because it's in his discretion, the court has the discretion to grant it. But I think that in this case, it was reasonable for the court not to grant it because, you know, the proceeding had been well underway. And I believe from the record, the defendant was well aware that this proceeding was not just about his motion. From the record, it appears that the defendant was very adamant about doing what he wanted to do, which provided a problem for him later down the road. But I don't think that the court was unreasonable in not granting his right to counsel once the proceedings had begun. Now, for the last admonishment promulgated by Rule 401A, or I'm sorry, I think I'm going to repeat myself. So I think where I left off was that now the concern was whether the defendant had knowledge of his minimum and maximum sentence and the nature of the proceedings. As I stated, given the defendant's familiarity and sophistication with the criminal law process and the trial process, his prior admonishments, his admonishments from his trial defense counsel, his admonishments at waiver, it is inconceivable that the defendant didn't know that he could receive a lengthy sentence upon conviction. The defendant had 25 prior convictions. He filed numerous motions. Thank you. Well, I would just stress to the court that the state's argument does not rest solely on the prior admonishments, but rests on the whole record, which establishes that the defendant's waiver of counsel was knowing and intelligent. And for those reasons, the state asks that this court affirm the judgment below. Thank you, counsel. Rebuttal? Is there a case in Illinois that says a failure to admonish as to his plain error? Could you find one case right on point? I'm sorry, I might have missed it. Sure. On People v. O'Gurk, there was the second district plain error review regarding the right to counsel. Our Supreme Court has never spoken on this point. Not the Supreme Court, no. Okay, and you know we're not bound by history. I do, yes. First, regarding the plain error argument, as I stated before, the right to counsel is fundamental, and therefore this violation of a fundamental right. It's not that he wasn't given counsel. He just didn't like his counsel, isn't it? That's true. So the right to counsel he likes is not one of the requirements, is it? No, but the right to counsel is fundamental. I know that. The waiver of counsel, it naturally follows, is fundamental as well. And the court should have followed Rule 401A. It was the court's duty to discuss all three admonitions, and it left out two of the three. Now, I want to just touch on a few points that were brought up. The legal sophistication argument, it should be noted that in its brief, the state did not cite one case where legal sophistication relied upon a defendant's past criminal history, and it just argued that the criminal record should suffice as legal sophistication. In People v. Black in 2000, this court held and discussed the legal sophistication arguments, and they found a defendant was legally sophisticated when he had previously been trained as a paralegal. The criminal record of a defendant was one of four factors, also, the Black case highlighted, where legal sophistication was allowed as an argument. So this court reviewed those cases already and found that a criminal record by itself is not legal sophistication. Next, what I— Apparently what you're trying to say, though, he has to get an attorney that he likes, and he kind of denied attorneys until he gets Ethel E. Bailey. But, Your Honor, that's not the issue here. The issue here is the fact that the Supreme Court failed to follow this rule, and the previous admonishments cannot— He had an attorney. He didn't like it. He did. He did not. No. So he didn't want another one. Yes. But could the court say, you've got to have one or it would be a plain error? I'm sorry? The court can. The court can say you have to take one? No, but the court was required to properly admonish Giovanni Elena. He was not properly admonished here. Okay. It is two out of the three required admonitions, and the previous admonitions, 193 days prior, it cannot satisfy the requirements because it undermines the purpose behind that one, and that is that he is allowed to fully reflect upon what the actual waiver of counsel entails, and he was not given that opportunity here. He was given counsel, though, apparently. He was. That was an appointed counsel? Yes, but he was not given the opportunity to reflect what the absence of counsel would mean for his case. He was not told the minimum and maximum sentences, and he was not described the nature of the charges against him in this case. He was only told that he needed an attorney and he should have one. Without those other two, the waiver does not comply with the rules and should not be upheld. Are there any other questions? No, not for now. I see none. Thank you. Thank you. Thank you. The next case on the call is 5-13-0057, P. Morris Pica. Counsel, are you ready to proceed? May it please the Court. My name is Amanda Corner from the Office of the State Appellate Defender, and today I'm representing Mr. Rajah Pica. Your Honors, Mr. Pica was convicted of delivery of cocaine within 1,000 feet of a church. At this time, Mr. Pica is not disputing that he was guilty of delivery. However, he is asserting that the State failed to prove that it occurred within 1,000 feet of a church. Therefore, Mr. Pica is asking for a limited remand at this point for new sentencing and for this Court to vacate the portion of the conviction that has to do with 1,000 feet of the church, the aggravating factor. Are you contesting both that it was a church and active as a church? We are contesting that this building was an active church on the date of the offense. You're conceding basically that it's a church by virtue of its name? I understand that there are some case law that contests such as Salvation Army Church or things like that. Whether this building, I'm not suggesting that the Apostolic Church of God does not by itself suggest that at some point this building might have been a church. But the point is that it must be a church on the date of the offense. And here the State simply failed to prove that on the date of the offense that this building was operating as a church. In other words, if somebody would go down the street and say there is a church, that doesn't mean it's operating. Is that a definition of a church, that they must have some sort of religious thing going on at the time? When is it a church and when is it not a church? That is, in operation or not operation? I didn't know that. I didn't see that. According to People v. Ortiz, this building needs to be operating as a church. Now there are a lot of definitions as to what operating as a church might mean. So what does the statute say? Would there be an operating church? Primarily as a church. Now what does it say? What does the statute exactly say? The statute says that the defendant knowingly delivered a substance containing cocaine and that the delivery took place within 1,000 feet of a church. No, I mean the statute, which says it's illegal to do something. Doesn't it say within 1,000 feet of a church or something? A church, a school. But it doesn't say a church, that as of today is a church. Are there parishioners there? I don't know. No. It does not provide an exact definition. It just says a church. It just says a church. So did he violate that? Your Honor, it's not clear from the record. And the state had the burden of proving that it was a church. Didn't the deputy or somebody testify that he measured and it was a church? Actually, the exact language, and this is the only testimony presented regarding the church, was by Officer Ramtree. And the state asked him the following question. Now did you have the chance later on during this investigation to do some measurements here in Harrisburg? He said, yes, I did. And then he goes on to say that it was within 1,000 feet of a church. Now, we know that this measurement took place more than a year after the date of the offense. Perhaps that sign wasn't on the building, you know, at the time. Perhaps there was no one using that building as a church. Perhaps that building had been used as a church 50 years ago, but on the date of the offense it was no longer being used as a church. Now, at least part of the purpose of knowing that this was a church on the date is because if this is merely a building, it doesn't have the same sort of heightened awareness, need to protect those inside that are engaging in religious activity, just like a school or students inside. If there's simply an abandoned building that once was a school, there is no heightened need to protect that building anymore. Similarly, if it was a building and later became a school or a church, there's no need to protect it as heightened on the date of the offense if it wasn't being operated in whatever manner, if that were a church or a school. We've decided that when these activities are going on, there's a heightened need to protect. Now, People v. Ortiz and the other appellate court cases that have since followed Ortiz have found that this is an easy burden for the state to meet. All the state has to do is to call in a pastor or a church member, anyone with personal knowledge, that this was a church on the day of the offense. Here. But Sims, which is the most recent one I could find, looks more to the indicia that the officer might have with respect to his time in the community, his familiarity with the neighborhood, his training, and that kind of thing. And wasn't there some similar information by Roundtree? No, there wasn't. The difference, the primary difference between Sims and Ortiz and all these other cases is that Sims allowed the jury to draw inference from the officer's personal knowledge. Now, in Sims, this police officer had been on the force in Bloomington. Again, it was a state police force, right, so it's much smaller. He'd been on the police force for 10 years. He'd been a patrol officer for five, and he testified not only was it an active church, but it had been a church for as long as he could remember. In other words, he had this personal knowledge, and in Sims, the court said that was enough. The jury could have drawn that inference. Here, the only person to testify is Officer Roundtree. He's not a local police officer. What did he say? He said, and again, he was asked, now do you have the chance later on during this investigation to do some measurements? He said, yes, I did. And then the next time he mentions the church, he said, and can you tell me what the purpose, let me back up, where did you measure from? I measured from the corner of Mr. Peacock's residence, the actual corner of the building, to the Apostolic Church of God, which is located to the southeast of his residence. So then during the whole trial, that's the only time that was mentioned? There was one other moment later on, and on this particular day, and this is the state, when you made this measurement, can you tell us what the distance is from Mr. Peacock's property to the Apostolic Church of God? And Officer Roundtree says, yes, from the corner of the building to the Church of God to the corner of Mr. Peacock's residence. He never again mentions the church, and there was no other testimony. They only had one witness in this case? Well, there were other witnesses related to the delivery charges, so there was a... Which one minister did? The confidential informant never mentioned the church. The confidential informant only testified about going to Mr. Peacock's residence and purchasing drugs. She never mentioned that this had anything to do with the church. So nobody ever mentioned except in this case, one person mentioned any church? Yes. Yes. Officer Roundtree was the only witness who mentioned the church at all. So there's no church mentioned at any place south of Effingham? No. And the testimony that I just read to you is the entirety that involved the church. There is some discussion regarding the measurements, how the measurements were taken, but those are the only times in the entire trial the church itself is mentioned. And that's a year later. And that was a year later. The jury also understood that Officer Roundtree was a state police officer in charge of drug investigations south of Effingham. He was assigned to the southern Illinois district. So that, as you all know, encompasses a lot of different counties. He was not a local patrol officer. He had no knowledge, at least, that he testified to or the jury would have been aware of this neighborhood or what this church would, you know, whether this apostolic church of God was a church at all. Further, where were you? You're kind of blending two different concepts because I thought it was pretty clear that if it has church in the title that it's reasonable to infer that it was, in fact, a place of worship. But the question is rather whether or not it was operating primarily as a church at the time of the offense. Let me rephrase. First, Officer Roundtree had no idea whether this building was labeled as the apostolic church of God on the date of the offense. He took the measurements a year later. Who knows whether that building was labeled as such on the date of the offense? The second point that I would make is that simply because it's labeled does not mean it's active. For example, you can have a church that was once an active church 50 years ago. It's an abandoned building. No one has taken down a sign. So Roundtree didn't testify to the fact that when he arrested him that he knew that he was within 1,000 feet of the particular church in question. No, he did not. And it's particularly interesting in this case because Roundtree never intended to go to Mr. Peacock's residence, or at least that's a fair reading of the record, on the day in question. In fact, they wanted to buy drugs from another individual who was unavailable. And as a result, they sort of put together really quickly Mr. Peacock and went to his house instead. So there's no evidence in the record that Officer Roundtree would have even investigated the area or have been aware of it on the day in question. There's also no evidence in the record for assuming that Officer Roundtree was familiar with Harrisburg at all or the neighboring communities. Again, he was assigned to the entire southern district of Illinois. Was this raised at trial as an objection to his lack of foundation? It was not, Your Honor, but this is a question of reasonable doubt which can be raised at any time. The state bears the burden to meet the sufficiency of the evidence, and here there was insufficient evidence to prove that this occurred within 1,000 feet of a church. Now, because Mr. Peacock's not contesting the delivery, this would be a limited remand, a vacating of just the aggravated portion within 1,000 feet of a church and a limited remand to be re-sentenced on delivery alone without the aggravating factor. Thank you, counsel. Thank you. Thank you. Good afternoon. May it please the defense counsel. We're going to have to speak way up here. It's being recorded, so I have to speak. May it please the court, defense counsel. We have to hear as well. Thank you. The state maintains that the evidence proved beyond a reasonable doubt that the defendant committed the crime of unlawful delivery of a controlled substance within 1,000 feet beyond a reasonable doubt. On appeal, the question is whether any rational trial fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence and the light most favorable to the prosecution. In accordance with this standard, a reviewing court may draw any inference in the prosecution's favor if it would be reasonably defensible to draw that inference from the evidence presented at trial. The state maintains that Inspector Roundtree's testimony sufficiently established that the defendant had delivered a controlled substance within 1,000 feet of a church. Okay. Stop there. I think we've all established that it was a church at some time and has the nomenclature in it. How did he show that it was primarily operating as a church at the time of the offense? I would point to the case of People v. Sims. And in that case, the Fourth District Court stated that if there's no foundational objection where the officer is testifying to a building being a church, then that testimony can be considered to have probative value. Then the question becomes whether an inference can be made that the officer's testimony establishes that the building was operating as a church. And I have Sims right in front of me, and I've read it, and I agree with you that they pretty much went back to Foster, which was an earlier case that said if it has the name church in it or synagogue, therefore you can infer it. But it then goes on to list a number of indicia that established through witness testimony that it was operational as a church at the time of the offense. And I think what the defense is saying is that none of that was established here. Your Honor, the state believes that in Inspector Roundtree's testimony, when he was testifying, that there were factors that could be inferred that he would know from that testimony. Okay, then tell us what those are. First of all, he testified that he was familiar, in his line of work, he would be familiar with Harrisburg because he had worked six years with the state police, two years with the task force. He worked on federal and state drug cases in the southern district, south of Effingham. Also, he was familiar- Are these facts about his background, or did he actually testify to these facts? He was testifying that he worked six years with the state police, and then two years with the task force. Then he started to testify regarding that he had worked federal and state cases in the southern district. He also testified that he was working, that the defendant was a person of interest. He further testified that they were doing a, had a confidential source, Julie Schatz, that they were doing a controlled drug buy. During that time, the person that was supposed to come in and come to Harrisburg at the time. So, Julie Schatz was asked, was requested to make the drug purchase. At his home, which was kind of a change of venue, correct? Correct. But, Inspector Roundtree was the person that ended up, after she was fitted with the equipment, he drove her over to the defendant's home. Actually, he dropped her off, and he testifies to this, at the American Legion, at a parking lot. And then she exits the car and walks to the defendant's residence. Also, he testifies that the nature of his work, that he would be out in the community. He did control drugs by surveillance. So, in light of that, he would have some knowledge. It could be implied that he would have knowledge. What this building was operating as a church on the day of the defense. And one of the factors that the sim court points to is the person having some personal knowledge. Whether they are active, whether they lived in the neighborhood, whether they patrolled the neighborhood. What would allow them to have some knowledge about the neighborhood? And actually, those things that you just stated, he didn't fit any of those, did he? He didn't live in the neighborhood. No, he did not. He wasn't active in the neighborhood. He worked in the neighborhood. He worked in the southern district. That's a huge area. He also said that he worked in the county, which Harrisburg is in Saline County. But the facts show that he was familiar with Harrisburg because he was able to, he knew where the defendant lived. He said that he was a person of interest. He actually drove the confidential source to the location so that she could make the control drug by. He knew about the American Legion. I think it's reasonable to infer that he knew the buildings in the neighborhood and what they were used for. And then when you look at his testimony as concerning when he uses the church word, he on his own states that it's the apostolic church of God. Whereas in other cases, leading questions were asked. And he stated that he measured from the Pecos residence to the actual corner of the apostolic church of God. He also refers again to the church. So under Sims, it's reasonable to infer that because of his knowledge of the area, that he would know, working in the area, that he would know that apostolic church was operating at a church at that time. And I would also note that in the Sims case, when the court was discussing the case of Foster, the court stated that Foster holds that nomenclature is enough. But that's relating back to the church, whether or not it's a church. And I think everybody's conceded that it was a church. Correct. The majority of Sims deals with whether or not it's operational at the time. That's true. But the court goes on to comment about Foster that all a police officer has to do is refer to the building by a proper name with the term church in it, New Hope Church, for example. And that proves beyond a reasonable doubt that the building was used primarily for religious worship on the day of the offense. That's a comment that's made by Sims court in regards to Foster. What page is that?  Page. Under Section 2, the primary use of 411 East Mulberry Street. But the Sims court didn't agree with that. They agreed that the nomenclature was enough, but not just that Foster may have held that the inference then was enough to show that it was. But Sims doesn't agree with that. Sims, when my point on that was that Sims had found that nomenclature was enough to establish it was a church used primarily for religious reasons on the day of the offense. And that's the way that the Sims court had interpreted Foster. But it's true that Sims also said where there's no foundational objection to the officer using the word church that there needs to be additional evidence that's presented where the officer shows that he has personal knowledge to be able to testify that would allow an inference that the building operated primarily for religious services on the day of the offense. The state would ask that this court affirm the defendant's invention. Thank you. Your Honor. When we look at the Sims case, the primary point of the Sims case is that an officer can have personal knowledge, and Mr. Peacock's not disputing that. And even if we assume that Officer Roundtree had personal knowledge, it's still not enough because he did not testify to that in front of the jury. In Sims case, it wasn't a question of dates. The Sims case wasn't worried about timing. The officer said for as long as he could remember and had been an officer for at least 10 years, that building had been used as a church. Here, the best the jury could draw from this was that later on, more than a year later, Officer Roundtree or Investigator Roundtree could say that this building was being used as a church. Never did Investigator Roundtree state that on the date of the offense, this building was being used as a church. Never did he mention that he saw this church, that he had any personal knowledge that on June 3rd, 2008, this building was being used as a church. And in Sims, the jury could have certainly drawn that inference because for 5, 10 years, the police officer stated, look, I knew this was a church. I worked this beat. I understand this neighborhood. This was a church. And Mr. Roundtree never stated that to the jury. And the jury can only draw inferences from information it has before it, from the evidence. And the evidence in this case is that more than one year later, Investigator Roundtree testified that this building was in fact a church. That is the extent of the knowledge that he had, and that is the extent of the evidence before the jury. It was impossible for the jury to make an inference from that single statement that more than a year prior, this building had been used as a church. Roundtree himself doesn't make that assertion, and the jury can't possibly draw an inference from that. Further, while Officer Roundtree may in fact have some familiarity with Slimming County, it's unclear from the record just how much. He also testified he was in every county south of Effingham. That's a number of counties, a number of communities. Who knows how many churches are possibly contained within the borders of the counties south of Effingham. And Roundtree offered no explanation that he knew Harrisburg well enough to identify the churches, or that he had sufficient personal knowledge to determine that this building was actually being used as a church. As we noted earlier, a building can be labeled, and it can be an abandoned building from some time ago. There had to be some personal knowledge that on June 3rd, 2008, Officer Roundtree had knowledge that this building was being used as the Apostolic Church of God. And finally, the state makes the point that he knew the name of the church by himself without being asked. Well, of course he did. He went there, and with a measuring stick, measured from Mr. Peacock's residence to this building. He stood in front of the building and made that measurement. So maybe a year later, he was familiar enough to know the name of the church. That is certainly not evidence that was before the jury upon which they could have made an inference. Therefore, Mr. Peacock respectfully requests that this court vacate the aggravating portion of the delivery charge and provide a limited remand for resentencing on delivery.  Thank you, Counsel.